IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 7, 2016 Session

**IN RE: K.F.R.T., ET AL.**

**Appeal from the Juvenile Court for Hamblen County**
**Nos. 16035J, 16036J, 16037J    Janice Hope Snider, Judge**

_____

**No. E2015-01459-COA-R3-PT-MARCH 10, 2016**

_____

D. MICHAEL SWINEY, C.J., concurring and dissenting.

I concur in most of the majority's opinion. I, however, cannot concur with the majority in its decision to reverse the Juvenile Court's finding as to wanton disregard. I would affirm the Juvenile Court on this issue as well as on all other issues. As such, I also cannot agree with the majority's decision concerning best interest as that issue never is reached if there is no ground for termination.

The majority reverses the Juvenile Court and terminates Father's parental rights to the Children by finding wanton disregard. I generally agree with the majority regarding the broad scope of pre-incarceration conduct that courts may consider relative to the ground of wanton disregard. Nevertheless, there is no bright line test for exactly which conduct constitutes wanton disregard. Incarceration alone is not, except where statutorily prescribed, a ground for termination of parental rights. Our General Assembly has provided when incarceration on its own will suffice as grounds for termination of parental rights. Such an incarceration is not present here. This reality may not be effectively circumvented by relying on the broad record of past behavior courts may take into account in considering the ground of wanton disregard. That which constitutes wanton disregard must be determined in light of the circumstances of each case.

In the present case, the majority accurately outlines Father's record of criminal misdeeds. I do not in any sense belittle the wrongness of Father's offenses. However, going back five or six years to dredge up DUIs, for example, is a stretch when it comes to terminating a parent's right to his or her child, a fundamental right.

I also, respectfully, disagree with the majority when it states that "[t]he Court of Appeals in _Audrey_ opined that wanton disregard can be based upon bad conduct that occurs at any time prior to incarceration. . . ." _Audrey_ did not say that bad conduct at any time in the past, no matter how many years ago, is necessarily relevant to whether

there is wanton disregard. This court in *Audrey* instead held that as to whether parental conduct constitutes wanton disregard for the welfare of the child, it is "of no moment whether that conduct occurred during the four months immediately preceding the parent's incarceration or at some earlier point in time." *In Re: Audrey S.,* 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005). There is a vast difference between "at any time prior to incarceration" and "some earlier point in time." Clearly, in every case there is some point in time at which prior conduct so far in the past becomes irrelevant or at least its impact lessens as to whether a parent has displayed wanton disregard for the welfare of his or her child. This reasoning applies to a single incident of domestic violence, even though it is indeed a loathsome act. I submit that an additional legion of parents may well be at risk of losing their parental rights under such a sweeping interpretation of wanton disregard as adopted today by the majority.

The majority also makes much of the fact that Father was arrested and incarcerated in Mexico for four months on a charge of extortion. There is no proof in the record that Father ever was convicted in Mexico on a charge of extortion. It was not Father's burden to prove that he was not convicted, but rather it was DCS's burden to show that he was convicted. I find it more than a little troubling that an arrest without a conviction can be used as proof of wanton disregard in terminating a parent's parental rights. Not every individual arrested has committed the conduct he is accused of having committed.

The majority further calls into question how Father could care for his children when he repeatedly and illegally crossed the border into the United States. On this point, we do not have to guess. The Juvenile Court found that Father's repeated illegal efforts to re-enter our country "were a last ditch, desperate attempt to try and salvage his relationship with his children, however misguided his attempts may have been." The Juvenile Court made this finding based upon its credibility determination as to Father's testimony on this point after hearing Father testify by telephone from Mexico.

We extend strong deference to trial courts' credibility determinations, and we are not to overturn the credibility determination of a trial court absent clear and convincing evidence to the contrary. *Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014). This is so even when, as in the present case, the witness testifies by telephone. Our Supreme Court in reversing a majority decision of the Court of Appeals held in *Kelly* that the same deference appellate courts extend to trial courts' credibility determinations of in-person testimony applies equally to telephonic testimony. Our Supreme Court stated:

> [W]e also believe that a trial court is better-situated to gauge the credibility of a telephonic witness than an appellate court. To the extent that the Court of Appeals majority rejected the weight the trial court ascribed to the counselor's testimony solely because she testified by telephone, we find this lack of deference erroneous.

*Kelly*, 445 S.W.3d at 695.

It is troublesome that the majority now appears willing to set aside the Juvenile Court's assessment of Father's credibility and instead substitute its own credibility assessment regarding his stated motives for crossing into our country illegally. Clearly, the Juvenile Court found Father convincing in his explanation. Under *Kelly*, we are not permitted to conduct our own independent credibility assessment even of telephonic testimony absent clear and convincing evidence to the contrary. I find no such clear and convincing evidence in the record on appeal, and the majority points to none sufficient to overturn the Juvenile Court's determination of Father's credibility and the resulting Juvenile Court's finding as to Father's motives in crossing the border. I, respectfully, disagree with the majority's simply substituting its judgment for that of the Juvenile Court's as to Father's credibility on this issue.

As to a possible argument that, regardless of Father's motives, his habitual illegal border-crossing constituted wanton disregard for the Children, that argument should fail as well. The majority reminds us that Tenn. Code Ann. § 36-1-102(1)(A)(iv), insofar as it relates to wanton disregard, is as much about a parent's state of mind as the conduct itself. I agree. Who better to assess the state of mind of a witness, even one testifying by telephone at trial from another country, than a trial court? Can it really be that a parent's "last ditch, desperate attempt to try and salvage his relationship with his children, however misguided his attempts may have been" somehow shows his wanton disregard for his children? Are we to assume without any proof in the record proving such an assumption that Father could have entered the United States legally in order to attempt to salvage a relationship with his children? There certainly was little, if any, proof presented that he could have done so successfully. If Father, instead, simply had remained in Mexico and made no effort to salvage his relationship with his children, undoubtedly that would have been used against him to terminate his parental rights. We are not at liberty to ignore the reality of the nearly impossible situation that Father, admittedly at least partially by his own actions, found himself in as to his children.

The Juvenile Court accepted Father's account of his motives as being credible. Under *Kelly*, absent clear and convincing evidence to the contrary, we are constrained to defer to this credibility determination made by the Juvenile Court. This being so, and for the additional reasons argued above, I would find that the Juvenile Court was correct in declining to find wanton disregard.

As I would affirm the Juvenile Court's judgment in favor of Father as to all grounds for termination, I also, respectfully, dissent from the majority's determination that best interest was proven as the best interest question never is reached in my view.

_____
D. MICHAEL SWINEY, CHIEF JUDGE